UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES COURTNEY and CLIFFORD COURTNEY, | NO: 2:11-CV-0401-TOR |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS |
| v. | |
| DAVID DANNER, chairman and commissioner; ANN RENDAHL, commissioner; and JAY BALASBAS, commissioner, in their official capacities as officers and members of the Washington Utilities and Transportation Commission; and MARK JOHNSON, in his official capacity as executive director of the Washington Utilities and Transportation Commission, | |
| Defendants. | |

BEFORE THE COURT is the Defendants' Renewed Motion to Dismiss.

ECF No. 59. The Court heard oral argument on November 20, 2018. Michael E.

Bindas appeared on behalf of Plaintiffs James Courtney and Clifford Courtney.

ORDER GRANTING RENEWED MOTION TO DISMISS ~ 1

1 | Assistant Attorney General Jeff Roberson appeared on behalf of the Defendants.

2 | The Court has reviewed the record and files herein, and is fully informed.

3 | **BACKGROUND**

4 | Plaintiffs James Courtney and Clifford Courtney ("the Courtneys")

5 | challenge the constitutionality of Washington's requirement that an operator of a

6 | commercial ferry obtain a certificate of "public convenience and necessity"

7 | ("PCN") from the Washington Utilities and Transportation Commission

8 | ("WUTC") before commencing operations. The Courtneys initially filed this

9 | lawsuit on October 19, 2011, asserting two claims under the Privileges or

10 | Immunities Clause of the Fourteenth Amendment. ECF No. 1. Currently, only the

11 | Courtneys' second claim remains pending before the Court. Specifically, the

12 | Courtneys assert that the PCN requirement, as applied to their proposed ferry

13 | service on Lake Chelan "for customers or patrons of specific businesses or groups

14 | of businesses," violates their right "to use the navigable waters of the United

15 | States" under the Fourteenth Amendment. ECF No. 1 at 34-38. Defendants move

16 | to dismiss the Courtneys' second claim pursuant to Federal Rule of Civil

17 | Procedure 12(b)(6). ECF No. 59. Defendants argue that dismissal is appropriate

18 | because the Courtneys do not have a Fourteenth Amendment right to operate a

19 | commercial ferry service and, therefore, they fail to state a claim upon which relief

20 | can be granted. *Id*. at 8.

# FACTS

As the Courtneys observe, the Court is well-versed in the facts and procedural history of this case, which have been summarized at length by not only this Court, but also the United States Court of Appeals for the Ninth Circuit and Division Three of the Washington Court of Appeals. The following facts are drawn from the Courtneys' Complaint, as well as the prior federal and state court decisions, and are accepted "as true" for purposes of this motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

The Courtneys are residents of Stehekin, Washington, a small unincorporated town at the northwest end of Lake Chelan. The Courtneys and their families own several businesses in Stehekin, including two float plane companies, Stehekin Valley Ranch, Stehekin Outfitters, Stehekin Log Cabins, and Stehekin Pastry Company. ECF No. 1 at 15. Stehekin is a popular tourist destination, particularly during the summer months. However, access to the town is limited: the only means of accessing Stehekin is by boat, seaplane, or on foot. *Id*. at 5. Currently, most tourists and residents reach Stehekin by way of a public ferry operated by the Lake Chelan Boat Company, which has operated a year-round commercial ferry service on Lake Chelan since 1929. *Id*. at 7.

The State of Washington regulates commercial public ferries by statute. In 1927, the Washington legislature enacted a law that conditioned the right to

operate a ferry service upon certification that such service was required by "public

convenience and necessity." Laws of 1927, ch. 248, § 1. In its current form, RCW

81.84.010 provides in relevant part:

> A commercial ferry may not operate any vessel or ferry for the public
> use for hire between fixed termini or over a regular route upon the
> waters within this state . . . without first applying for and obtaining
> from the commission a certificate declaring that public convenience
> and necessity require such operation.

RCW 81.84.010(1). In order to obtain a PCN certificate, a potential ferry operator

must prove that its proposed operation is required by "public convenience and

necessity," and that it "has the financial resources to operate the proposed service

for at least twelve months[.]" RCW 81.84.020(1)-(2). If the territory in which the

applicant desires to set up operation is already being served by a commercial ferry

company, no PCN certificate may be granted unless the applicant proves that the

existing certificate holder "has failed or refused to furnish reasonable and adequate

service, has failed to provide the service described in its certificate or tariffs after

the time allowed to initiate service has elapsed, or has not objected to the issuance

of the certificate as prayed for." RCW 81.84.020(1).

Since 1927, only one PCN certificate has been issued for providing ferry

services on Lake Chelan. ECF No. 35 at 6. The WUTC's predecessor issued a

PCN certificate to the Lake Chelan Boat Company in 1929 and, since that time, the

Lake Chelan Boat Company has successfully protected its exclusivity. ECF No. 1

ORDER GRANTING RENEWED MOTION TO DISMISS ~ 4

at 7. At least four potential ferry operators have applied for a PCN certificate over the last sixty years, but all were denied by the WUTC after Lake Chelan Boat Company objected to the applications. *Id*. at 13.

The Courtneys would like to establish a competing ferry service on Lake Chelan. In fact, they have unsuccessfully attempted to operate their own Stehekin-based commercial ferry over the past two decades. In 1997, James Courtney applied for a PCN certificate to operate a commercial ferry out of Stehekin. ECF No. 1 at 16. However, the Lake Chelan Boat Company objected, and the WUTC ultimately denied James's application. *Id*. at 16-18. In 2006, James explored the possibility of providing a Stehekin-based on-call boat service, which he believed fell within the "charter service" exemption to the PCN requirement. *Id*. at 19. The WUTC initially opined that a PCN certificate would not be needed for the proposed on-call boat service, then reversed course and informed James that a PCN certificate was needed, before reversing course yet again and advising James that the proposed service would be exempt from the PCN requirement. *Id*. at 19-20. Ultimately, no formal decision was ever rendered as to the proposed on-call service.

In 2008, Clifford Courtney contacted Defendant David Danner seeking guidance as to whether two alternative boat transportation services would require a PCN certificate. *Id*. at 22. The first proposal was a "charter" service whereby

Clifford would hire a private boat to transport patrons of his lodging and river

rafting businesses between Chelan and Stehekin. The second proposal was a

service whereby Clifford would "shuttle" his customers between Chelan and

Stehekin in his own private boat. Defendant Danner responded that, in his opinion,

both services would require a formal certificate. Specifically, Defendant Danner

opined that even private boat transportation, offered exclusively to paying

customers of Clifford's lodging and river rafting businesses, would be service "for

the public use for hire" for which a formal certificate was required pursuant to

RCW 81.84.010. Defendant Danner noted, however, that his opinion was merely

advisory in nature and that Clifford was free to seek a formal ruling on the issue

from the full Commission. ECF No. 1 at 24.

In February 2009, Clifford contacted the Governor of the State of

Washington and several state legislators regarding the PCN requirement. *Id*. at 25.

In response, the state legislature directed the WUTC to conduct a study on the

regulation of commercial ferry services on Lake Chelan. The WUTC delivered a

formal report to the state legislature in January 2010. *See* WUTC, *Appropriateness*

*of Rate and Service Regulation of Commercial Ferries Operating on Lake Chelan:*

*Report to the Legislature Pursuant to ESB 5894*, January 14, 2010 (available at

https://app.leg.wa.gov/ReportsToTheLegislature/Home/GetPDF?fileName=Steheki

n%20Report%20Final_a25a3eb0-cd39-4779-9c08-ecdec4c084a8.pdf). In the

report, the WUTC concluded that Lake Chelan Boat Company was providing

satisfactory service and recommended that there be no change to the existing laws

and regulations.  The WUTC noted, however, that there might be flexibility under

the existing law to permit some competition by exempting certain services from

the PCN certificate requirement, including the private carrier exemption.  As the

WUTC explained,

> [T]here may be flexibility within the law for the Commission to take an expensive interpretation of the private carrier exemption from commercial ferry regulation. For example, the Commission might reasonably conclude that a boat service offered on Lake Chelan (and elsewhere) in conjunction with lodging at a particular hotel or resort, and which is not otherwise open to the public, does not require a certificate under RCW 81.84.

*Report to Legislature* at 15.

In 2011, the Courtneys filed suit in this Court against the WUTC and various

commissioners and directors in their official capacities, seeking declaratory and

injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201.  ECF No. 1.

As noted, the Courtneys asserted two causes of action under the Privileges or

Immunities Clause of the Fourteenth Amendment.  First, they alleged the State of

Washington's PCN requirement infringed upon their right to provide a commercial

ferry service open to the general public on Lake Chelan.  *Id*. at 30-33.  Second,

they claimed that the PCN requirement also infringed upon their right to provide a

private ferry service for patrons of their Stehekin-based businesses.  *Id*. at 34-38.

1    Defendants moved to dismiss the Complaint pursuant to Federal Rule of

2   Civil Procedure 12(b)(6).  This Court dismissed the Courtneys' first claim—

3   challenging the constitutionality of the PCN requirement as applied to the

4   provision of a public ferry service on Lake Chelan—with prejudice, concluding

5   that it was still unclear whether the "right to use the navigable waters of the United

6   States" was "truly a recognized Fourteenth Amendment right," and, even assuming

7   it was, it did not extend to protect the right "to operate a commercial ferry service

8   open to the public."  ECF No. 22 at 14-17.  The Court dismissed the Courtneys'

9   second claim—challenging the constitutionality of the PCN requirement as applied

10  to the provision of boat transportation services on Lake Chelan for customers or

11  patrons of specific businesses—without prejudice, holding that the Courtneys

12  lacked standing, their claim was unripe, and that the Court would abstain from

13  deciding the constitutional question under the *Pullman* abstention doctrine

14  (*Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941).  *Id*. at 17-23.

15      In dismissing the Courtneys' second claim, the Court noted that neither the

16  WUTC nor any other state adjudicative body had definitely ruled that the

17  Courtneys' proposed "private ferry service would in fact require a PCN certificate

18  under RCW 81.84.010.  *Id*. at 19.  In light of the lingering uncertainty about

19  whether the Courtneys would be required to obtain a PCN certificate to operate

20  their proposed private ferry service, the Court dismissed the Courtneys' second

claim "without prejudice to afford the WUTC or the Washington state courts an opportunity to resolve this unsettled question of state law." *Id*. at 22-23.

On December 2, 2013, the Ninth Circuit affirmed the dismissal of the Courtneys' first claim but vacated the dismissal of the second claim. *Courtney v. Goltz*, 736 F.3d 1152 (9th Cir. 2013). Regarding the second claim, the Ninth Circuit concluded that the exercise of *Pullman* abstention was proper, but this Court "should have retained jurisdiction over the case pending resolution of the state law issues, rather than dismissing the case without prejudice." *Id*. at 1164. Accordingly, the Ninth Circuit vacated the dismissal of the second claim and remanded to this Court with instructions to retain jurisdiction over Defendants' second constitutional claim pending an authoritative construction of the phrase "for the public use for hire" by the WUTC or the Washington state courts. ECF Nos. 35; 36. On remand, consistent with the Ninth Circuit's instructions, this Court issued an order retaining jurisdiction over the Courtneys' second constitutional claim and staying the case pending action by the WUTC or the Washington courts. ECF No. 40.

On March 3, 2014, the Courtneys petitioned the United States Supreme Court for certiorari to review the disposition of their first claim only. The Supreme Court denied certiorari on the Courtneys' first claim on June 2, 2014. *Courtney v. Danner*, 572 U.S. 1149 (2014).

Thereafter, the Courtneys petitioned the WUTC for a declaratory order as to whether a PCN certificate was required to provide the "private" ferry service at issue in their second claim. ECF No. 52 at 4. The WUTC initially declined to enter an order on the ground that the Courtneys' petition lacked sufficient information and operational details. The Courtneys then filed a second petition setting forth five proposed ferry services, which they contended were not "for the public use," as contemplated by RCW 81.84.010(1). *Courtney v. Wash. Utils. & Transp. Comm'n*, 3 Wash. App. 2d 167, 172-73 (2018). As described in their petition, the proposed services would operate between Memorial Day and early October each year, and charge a flat rate of $37 per adult passenger for a one-way ticket or $74 for a roundtrip ticket. *Id*. at 173. Each of the proposed services would be owned by James and/or Clifford Courtney. The primary difference among the proposed services is the scope of passengers the boat would carry:

Proposal 1 (Lodging Customers of Stehekin Valley Ranch)— Passengers would be limited to persons with confirmed reservations to stay overnight at Stehekin Valley Ranch, owned by Clifford Courtney and his wife.

Proposal 2 (Lodging Customers and Customers of Other Activities Offered at Stehekin Valley Ranch)—In addition to persons with reservations to stay at the ranch, passengers would include anyone with reservations to participate in any of the activities the ranch offers, including activities provided by Stehekin Outfitters, run in part by Clifford Courtney's son.

Proposal 3 (Customers of Courtney Family-owned Businesses)— Passengers would be limited to anyone with reservations at any

1    business owned by Clifford or James Courtney or their extended
     family, including but not limited to the Stehekin Valley Ranch.

2

3    Proposal 4 (Customers of Stehekin-Based Businesses)—Passengers
     could be anyone with reservations at any Stehekin-based businesses
     that want to use the service, including but not limited to Courtney
4    family-owned businesses.

5    Proposal 5 (Charter by Stehekin-based Travel Company)—Passengers
     would be restricted to persons who have purchased a travel package
6    from a Stehekin-based travel agency that is not affiliated with the
     Courtneys but would charter the boat from the Courtneys.

7

8    *Id.* at 173-74.

9         The WUTC issued a declaratory order concluding that the Courtneys were

10   required to first obtain a PCN certificate before operating any of their five

11   proposed ferry services.  The WUTC noted that the only legal issue was whether

12   the proposed services would operate "for the public use" within the meaning of

13   RCW 81.84.010(1).  *Id*. at 174.  Based on the plain language of the statute, the

14   WUTC construed the phrase "for the public use" as meaning "accessible to or

15   shared by all members of the community."  *Id*. at 175.  The WUTC interpreted the

16   term "community" to mean "a body of individuals organized into a unit" or "linked

17   by common interests."  *Id*.  Combining these definitions, the WUTC concluded

18   that a commercial ferry operator must obtain a PCN certificate when the ferry "is

19   accessible to all persons that are part of a group with common interests."  *Id*.

20

ORDER GRANTING RENEWED MOTION TO DISMISS ~ 11

1    The Courtneys argued that the proposed services were not for the public use

2    because ferry services would be limited to customers of one or more particular

3    Stehekin businesses.  The WUTC disagreed, noting that the United States Supreme

4    Court had rejected a similar argument in *Terminal Taxicab Co. v. Kutz*, 241 U.S.

5    252 (1916).  Consistent with the *Terminal Taxicab* decision, the WUTC concluded

6    that limiting services to persons who are demonstrated customers of specific

7    businesses would not remove the services' essential public character.  *Courtney*, 3

8    Wash. App. 2d at 175.

9        The Courtneys petitioned the Chelan County Superior Court for judicial

10   review of the WUTC's declaratory order.  *Id*. at 176.  The trial court affirmed the

11   agency's decision and the Courtneys appealed to Division Three of the Washington

12   Court of Appeals.  *Id*.

13       On April 3, 2018, the Washington Court of Appeals affirmed the trial court

14   and explicitly adopted the WUTC's definition of "for the public use" as applying

15   to subsets of the public.  *Id*. at 181-82.  In concluding that the WUTC's definition

16   was correct, the Court of Appeals explained that "the public is free to visit

17   Stehekin" and "[l]imiting service to guests of one or more Stehekin businesses

18   does not strip the proposed ferry service of its public character."  *Id*. at 182.  Thus,

19   the Court of Appeals held that "the WUTC's rule is correct and consistent with the

20   legislative intent of RCW 81.84.010(1)."  *Id*.

The Courtneys then petitioned the Washington Supreme Court for

discretionary review on May 2, 2018.  On August 8, 2018, the Washington

Supreme Court denied review.  *Courtney v. Wash. Utils. & Transp. Comm'n*, 191

Wash.2d 1002 (2018).

After both the WUTC and the Washington courts definitively concluded that

the PCN requirement does, in fact, apply to the Courtneys' proposed "private"

ferry service, the Courtneys moved this Court to dissolve the stay and reopen their

case "to afford the Courtneys the opportunity to litigate their second Privileges or

Immunities Clause claim."  ECF No. 52 at 5.  The Court lifted the stay and

reopened this case on September 13, 2018.  ECF No. 56 at 2.  As before,

Defendants again move to dismiss the Courtneys' remaining claim under Federal

Rule of Civil Procedure 12(b)(6).

## DISCUSSION

A motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6) "tests

the legal sufficiency of a [plaintiff's] claim."  *Navarro v. Block*, 250 F.3d 729, 732

(9th Cir. 2001).  To survive such a motion, a plaintiff must allege facts which,

when taken as true, "state a claim to relief that is plausible on its face."  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted).  In order for a

plaintiff asserting a cause of action under 42 U.S.C. § 1983 to satisfy this standard,

he or she must allege facts which, if true, would constitute a violation of a right

guaranteed by the United States Constitution. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Similarly, a plaintiff seeking declaratory relief under 28 U.S.C. § 2201 must allege facts which, if true, would violate federal law. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672 (1950) (holding that Declaratory Judgment Act did not expand subject-matter jurisdiction of federal courts). As discussed below, Plaintiffs fail to satisfy these standards.

**A. Plaintiffs' Second Cause of Action: Operation of a Private Ferry Service to Patrons of Stehekin-Based Businesses**

When this Court initially dismissed the Courtneys' constitutional claims in 2011, no federal court had ever directly examined the "right to use the navigable waters of the United States," as referenced by the Supreme Court in the *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 79-80 (1872). In the absence of applicable precedent, this Court looked to the *Slaughter-House* decision, as well as the history and purpose of the Privileges or Immunities Clause, for guidance in defining the "right to use the navigable waters of the United States" and determining whether the State of Washington's PCN requirement infringed upon the right. Assuming the Fourteenth Amendment did in fact protect "the right to use the navigable waters of the United States," this Court concluded that the right did not extend to operating a commercial ferry open to the public on Lake Chelan. ECF No. 22 at 17. Particularly relevant here, this Court expressly rejected the Courtneys'

argument that the Privileges or Immunities Clause was designed to protect

quintessentially economic rights, and determined that using the navigable waters of

the United States "*in the manner the Courtneys have proposed—i.e.*, to operate a

competing commercial ferry business—is one of the 'fundamental' rights

conferred by state citizenship." *Id.* at 16 (emphasis in original).

On appeal, the Ninth Circuit agreed that "even if the Privileges or

Immunities Clause recognizes a federal right 'to use the navigable waters of the

United States,' the right does not extend to protect the Courtneys' use of Lake

Chelan to operate a commercial public ferry." *Courtney*, 736 F.3d at 1158. In

reaching this holding, the Ninth Circuit defined for the first time the "right to use

the navigable waters of the United States," as the phrase had "yet to be interpreted

by a single federal appellate court in the privileges or immunities context." *Id.* at

1159. According to the Ninth Circuit, "the right to use the navigable waters of the

United States" is "a right to *navigate* the navigable waters of the United States," *id.*

at 1160 (emphasis in original), not a right to *pursue economic opportunity* on the

navigable waters of the United States. Based on this interpretation of the phrase,

the Ninth Circuit held that "the Privileges or Immunities Clause of the Fourteenth

Amendment does not protect a right to operate a public ferry on Lake Chelan," and

explained what this meant for the Courtneys' first constitutional claim:

> At the end of the day, the state legislation the Courtneys challenge is
> narrow in scope, merely restricting the operation of *commercial public*

*ferries* to those who obtain a PCN certificate.  The PCN requirement does not constrain the Courtneys from traversing Lake Chelan in a private boat for private purposes.  Nor does it affect their ability to operate a commercial freight transportation service.  For that matter, the Courtneys are free to operate a commercial ferry service so long as they apply for and obtain a PCN certificate.

*Id*. at 1162 (emphasis added, citations omitted).

Here, the Courtneys argue that the Ninth Circuit's holding has no bearing on the success of their second claim because the proposed ferry service at issue here "involves only transportation for customers of a particular business" rather than a "commercial public ferry."  ECF No. 60 at 4.  According to the Courtneys, while the Ninth Circuit's decision conclusively establishes that the right "to use the navigable waters of the United States" does not include a right to operate a *commercial public ferry* on Lake Chelan, the question remains as to whether the right extends to the *private* boat transportation services at issue in their second claim.

Though the Courtneys describe the proposed ferry service at issue in their second claim as a "private" boat transportation service, the Court cannot ignore the fact that both the WUTC and the Washington courts have definitely concluded that the proposed "private" ferry service is in fact a *commercial public ferry service* under Washington law.  As the Washington Court of Appeals observed, "[l]imiting service to guests of one or more Stehekin businesses does not strip the proposed

ferry service of its public character." *Courtney*, 3 Wash. App. 2d at 182.  Thus, the

Court agrees with Defendants that, regardless of the label the Courtneys choose to

affix to the ferry service at issue in their second claim, at the end of the day it is a

commercial public ferry service that they seek to provide.

Thus, like their first claim, the actual privilege at stake here is "a ferry

operation privilege, not a broad navigation privilege." *Courtney*, 736 F.3d at 1160.

The Courtneys are not merely seeking to "travers[e] Lake Chelan in a private boat

for private purposes," nor are they being prevented from doing so.  *Id*. at 1162.

Instead, the Courtneys simply desire to operate a commercial ferry service for a

subset of the public, their customers.  As the Ninth Circuit explained, albeit in the

context of the Courtneys' first claim,

> Here, it is clear that the Courtneys wish to do more than simply
> navigate the waters of Lake Chelan.  Indeed, they are not restrained
> from doing so in a general sense.  Rather, they claim the right to
> utilize those waters for a very specific professional venture.  While
> navigation of Lake Chelan is a necessary component of the
> Courtneys' proposed activity, it is neither sufficient to achieve their
> purpose nor the cause of their dissatisfaction . . . Were navigation all
> the Courtneys wished to do, they would not need the WUTC's
> permission and this dispute would never have arisen.

*Id*. at 1160.  This logic applies with equal force to the Courtneys' second claim.

Accordingly, the Court concludes that the Courtneys do not have a Fourteenth

Amendment right to operate a commercial ferry service open to a subset of the

public on Lake Chelan.

In their response to Defendants' renewed motion to dismiss, the Courtneys devote fifteen page of their twenty-page brief to convincing this Court that the right to "use the navigable waters of the United States" encompasses "a right to use navigable waters in pursuit of a livelihood." ECF No. 60 at 7-21. In those fifteen pages, much ink is spilled in an effort to explain "[t]he link between national citizenship and use of the navigable waters in economic activity," and why "it is inconceivable that *Slaughter-House* did not intend the right to use the navigable waters of the United States to encompass use in the pursuit of a livelihood." *Id*. at 18-19, 21. The Courtneys assert that the fact that "they wish to exercise the ["right to use the navigable waters of the United States"] in an economic pursuit only strengthens their claim." *Id*. at 7.

However, this argument has previously been rejected by this Court and the Ninth Circuit. In holding that "the right to use the navigable waters of the United States" did not extend to operating a commercial public ferry, this Court explicitly rejected "the Courtneys' assertions that the Privileges or Immunities Clause was designed to protect quintessentially *economic* rights." ECF No. 22 at 15 (emphasis in original). Likewise, recognizing that the Courtneys' proposed commercial ferry service was an economic pursuit, the Ninth Circuit explained that economic rights are not generally protected by the Privileges or Immunities Clause:

> Further, the driving force behind this litigation is the Courtneys'
> desire to operate a particular business using Lake Chelan's navigable

ORDER GRANTING RENEWED MOTION TO DISMISS ~ 18

waters—an activity driven by economic concerns. We have narrowly construed the rights incident to United States citizenship enunciated in the *Slaughter-House Cases*, particularly with respect to regulation of intrastate economic activities.

*Courtney*, 736 F.3d at 1160-61. In short, contrary to the Courtneys' contentions, the economic purpose of the proposed ferry service at issue cuts against, rather than strengthens, their case.

Because the Fourteenth Amendment does not protect a right to operate a public ferry on Lake Chelan, the Court concludes the Courtneys' remaining claim fails to allege the deprivation of a right protected by the United States Constitution. Accordingly, the Courtneys' second claim must be dismissed.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

    1. Defendants' Renewed Motion to Dismiss (ECF No. 59) is **GRANTED**.

    2. Plaintiffs' second cause of action is **DISMISSED** with prejudice.

The District Court Executive is hereby directed to enter this Order and Judgment accordingly, provide copies to counsel, and close the file.

    **DATED** January 3, 2019.



                  THOMAS O. RICE
           Chief United States District Judge